UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KALIFAH E.D. SAIF'ULLAH
a/k/a FERNANDO JACKSON
(CDCR # C-14257),

    Petitioner,

v.

KEVIN CHAPPELL, Warden,

    Respondent.
_____/

No. C-12-6507 EMC (pr)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## I. INTRODUCTION

Kalifah E.D. Saif'ullah a/k/a Fernando Jackson filed this *pro se* action seeking a writ of habeas corpus under 28 U.S.C. § 2254. He claims that his constitutional right to be free of ex post facto laws was violated when the parole board applied a newly amended statute to set his next parole hearing in seven years. The matter is now before the Court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition is **DENIED**.

## II. BACKGROUND

Mr. Saif'ullah was convicted in Los Angeles County Superior Court of kidnapping for ransom and was sentenced on March 7, 1980 to life imprisonment with the possibility of parole. His crime was committed in 1978. Mr. Saif'ullah's federal petition for writ of habeas corpus does not challenge the conviction or sentence imposed and instead challenges the decision of the Board of Parole Hearings to deny him parole at an August 26, 2011 parole suitability hearing. More specifically, he contends that the parole board's decision to set his next parole hearing in seven

years, which is five years longer than the parole board could have set it under the former law, violated his right to be free of ex post facto laws. Before filing this action, Mr. Saif'ullah filed petitions for writ of habeas corpus in the state courts, which denied his claim without discussion.

### III.   JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the petition concerns the execution of a sentence for a prisoner incarcerated in Marin County, California, which is within this judicial district. 28 U.S.C. §§ 84, 2241(d).

### IV.   EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. *See* 28 U.S.C. § 2254(b), (c). State judicial remedies have been exhausted for the claim remaining for adjudication.

### V.   STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254 is the proper jurisdictional basis for a habeas petition attacking the execution of the sentence by a petitioner in custody pursuant to the judgment of a State court. *See White v. Lambert*, 370 F.3d 1002, 1004 (9th Cir. 2004), *overruled on other grounds by Hayward v. Marshall*, 603 F.3d 546, 554 (9th Cir. 2010).

The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

Here, the California courts rejected the ex post facto claim without discussion. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (one-sentence order denying habeas petition analyzed under §2254(d)); *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013) (order that discusses state law claim but not federal claim rebuttably presumed to be rejection on the merits and therefore subject to § 2254(d)). Mr. Saif'ullah does not suggest any reason to overcome the presumption that the state court adjudicated his federal claim on the merits.

## VI.   DISCUSSION

A.   <u>The Effect of Marsy's Law On Parole Hearings</u>

Prior to the November 2008 passage of Proposition 9 (also known as "Marsy's Law"), California Penal Code section 3041.5 provided for an initial parole hearing and thereafter annual subsequent parole suitability hearings, but allowed for longer periods between parole hearings under

certain conditions. The parole board could schedule the next subsequent hearing in two years after a hearing at which parole was denied if the board found it was not reasonable to expect that parole would be granted at a hearing during the following year and if the board stated the basis for the finding. Cal. Penal Code § 3041.5(b)(2)(B) (West 2008) (former version of statute). The board also could schedule the next subsequent hearing in five years for a prisoner convicted of murder under similar circumstances. Cal. Penal Code § 3041.5(b)(2)(B) (West 2008) (former version of statute).

At issue here is the portion of Marsy's Law that amended California Penal Code section 3041.5 to lengthen the default periods for subsequent[1] parole hearings for all prisoners to whom that section applied. *See* 2008 Cal. Legis. Serv. Proposition 9 (West) (available in Westlaw's Ca-Legis-Old database). As amended, section 3041.5 provides for a subsequent parole hearing to be scheduled in 3 to 15 years, with the default being 15 years after parole has been denied. Specifically, the next parole hearing will be scheduled in 15 years "unless the board finds by clear and convincing evidence that the criteria relevant to the setting of parole release dates . . . are such that consideration of the public and victim's safety does not require a more lengthy period of incarceration for the prisoner than 10 additional years." Cal. Penal Code § 3041.5(b)(3)(A). If the board makes such a finding, the next parole hearing will be scheduled in 10 years "unless the board finds by clear and convincing evidence that the criteria relevant to the setting of parole release dates . . . are such that consideration of the public and victim's safety does not require a more lengthy period of incarceration . . . than seven additional years." *Id.* § 3041.5(b)(3)(B). If the board makes such a finding, the next parole hearing will be scheduled in three, five or seven years. *Id.* § 3041.5(b)(3)(C).

Marsy's Law provides two routes to quicker parole consideration than the regularly scheduled subsequent parole hearing dates. First, section 3041.5(b)(4) now gives the board discretion to advance the date of the next parole hearing "when a change in circumstances or new information establishes a reasonable likelihood that consideration of the public and victim's safety

---

[1] A California prisoner has an initial parole hearing, and thereafter has subsequent parole hearings. For example, the third time he goes before the parole board will be referred to as his second subsequent parole hearing. Marsy's Law changed the frequency of subsequent parole hearings but did not change the timing of the initial parole hearing.

does not require the additional period of incarceration of the prisoner provided" by the statutory deferral periods. Second, section 3041.5(d)(1) now allows an inmate to petition the board to "exercise its discretion to advance a hearing . . . to an earlier date, by submitting a written request to the board, with notice, upon request, and a copy to the victim which shall set forth the change in circumstances or new information that establishes a reasonable likelihood that consideration of the public safety does not require the additional period of incarceration of the inmate."[2]

---

[2] Although the terms "changed circumstances" and "new information" are not statutorily defined, *In re Vicks* indicates that the terms are used with reference to the criteria for parole suitability:

> The standards applicable to the Board's assessment of a prisoner's petition are set forth in section 3041.5 and are based on long-established principles governing the Board's discretion. The Board evaluates a petition to determine whether it "set[s] forth [a] change in circumstances or new information that establishes a reasonable likelihood that consideration of the public safety does not require the additional period of incarceration...." (§ 3041.5, subd. (d)(1).) Whether there is a reasonable likelihood that the prisoner is suitable for parole is evaluated by considering the suitability criteria set forth in section 3041 and the Board's regulations. (Cal. Code Regs., tit. 15, § 2281, subds. (c), (d).)

*In re Vicks*, 56 Cal. 4th 271, 311 (Cal. 2013).

Section 2281 of the California Code of Regulations provides the following guidelines for parole suitability consideration:

> (c) Circumstances Tending to Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:
>
> > (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
> >
> > > (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
> > >
> > > (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
> > >
> > > (C) The victim was abused, defiled or mutilated during or after the offense.

    (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

  (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

  (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.

  (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

  (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

  (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(d) Circumstances Tending to Show Suitability. The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate suitability include:

  (1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

  (2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

  (3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or the prisoner has given indications that he understands the nature and magnitude of the offense.

  (4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life,

The board may summarily deny a prisoner's petition to advance if the petition does not comply with these requirements or if the board believes the change in circumstances or new information is insufficient to justify the board's exercise of its discretion to advance the hearing date. *Id.* § 3041.5(d)(2). The inmate cannot make countless requests: section 3041.5(d)(3) limits him to one written request to advance a hearing during a three-year period.

B. The Ex Post Facto Clause And Changes To Parole Laws

Article I, section 10 of the United States Constitution prohibits the States from passing any ex post facto law. "To fall within the *ex post facto* prohibition, a law must be retrospective – that is, 'it must apply to events occurring before its enactment' – and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (citations omitted). Some retroactive changes in parole laws may violate the Ex Post Facto Clause, but "not every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited." *Garner v. Jones*, 529 U.S. 244, 250 (2000). The controlling inquiry in examining a change to a parole law is "whether retroactive application of the change . . . create[s] 'a sufficient risk of increasing the

---

especially if the stress had built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. title 15, § 2281.

measure of punishment attached to the covered crimes.'" *Garner v. Jones*, 529 U.S. 244, 250 (2000) (quoting *Cal. Dept. of Corr. v. Morales*, 514 U.S. 499, 509 (1995)). Speculative and attenuated risks of prolonging incarceration do not establish a violation of the Ex Post Facto Clause. *Morales*, 514 U.S. at 509.

*Morales* and *Garner* comprise the "clearly established Federal law, as determined by the Supreme Court," for § 2254(d) purposes. Both those cases upheld amendments that decreased the frequency of parole hearings.

In *Morales*, the Court held that a statutory amendment that decreased the frequency of parole hearings did not violate the Ex Post Facto Clause. *Morales*, 514 U.S. at 514. At the time of Morales' crime, he would have been entitled to subsequent hearings on an annual basis; later, California law was changed to authorize the parole board to defer subsequent suitability hearings for up to three years if the prisoner had been convicted of multiple homicides and the board found that it was "'not reasonable to expect that parole would be granted at a hearing during the following years. . . .'" *Id.* at 503 (quoting Cal. Penal Code § 3041.5(b)(2) (West 1982)). The Court rejected the notion that the Ex Post Facto Clause forbade "any legislative change that has any conceivable risk of affecting a prisoner's punishment." *Id.* at 508. The Court also declined to impose a bright line rule or a single formula for identifying impermissible legislative changes. *Id.* at 508-09 & n.4. There was not an Ex Post Facto Clause violation in *Morales* because the legislative change had not "produce[d] a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 509. The amendment applied only to multiple murderers ("a class of prisoners for whom the likelihood of release on parole is quite remote," *id.* at 510); had not increased the statutory punishment for the offense; had not changed the substantive formula for securing a reduction of the sentence; had not changed the standards for fixing the prisoner's minimum eligible parole date; and had not changed the standards for determining his suitability for parole or the release date to be set if he was found suitable. *Id.* at 507. The *Morales* Court saw it significant that there was a safety valve in place to allow parole suitability consideration earlier than the next regularly scheduled hearing date, i.e., an expedited hearing might be held upon the request of a prisoner, a *sua sponte* order from the board, or an order from an administrative appeal. *See id.* at 512.

8

In *Garner*, the Court considered another statutory amendment that decreased the frequency of parole suitability hearings and found it not to violate the Ex Post Facto Clause. The law at issue was a Georgia amendment that allowed the parole board to schedule a parole hearing for a life prisoner as infrequently as once every eight years, whereas the law in place at the time of the prisoner's crime required a parole hearing every three years. *See Garner*, 529 U.S. at 247.[3] The amendment in *Garner* was harsher than that in *Morales* as it permitted a lengthier delay between parole hearings, applied to all life prisoners, and afforded fewer procedural safeguards – differences which the Supreme Court saw as "not dispositive." *Garner*, 529 U.S. at 251. *Garner* considered both a facial challenge and an as-applied challenge to the statute. First, to establish that the statute on its face violated the Ex Post Facto Clause, the prisoner had to show a sufficient risk of an increased measure of punishment. *See id.* at 251-52. The amendment in *Garner* did not have a sufficient risk. In rejecting the facial Ex Post Facto Clause challenge, the *Garner* Court noted that the lengthier periods between parole hearings were contingent on the board finding that it was not reasonable to expect that parole would be granted during the intervening years, and expedited parole review was permissible in the event of a change in the prisoner's circumstances or parole suitability. *Id.* at 254-55. Second, to establish an ex post facto violation in the amendment as applied, the prisoner had to "demonstrate, by evidence drawn from the rule's practical implementation by the

---

[3] The amended statute at issue in *Garner* provided: "Reconsideration of those inmates serving life sentences who have been denied parole shall take place at least every eight years. The Board will inform inmates denied parole of the reasons for such denial without disclosing confidential sources of information or possible discouraging diagnostic opinions." Ga. Comp. R. & Regs. r. 475–3–.05.(2) (quoted in *Jones v. Garner*, 164 F.3d 589, 590 n.1 (11th Cir. 1999), *reversed by Garner v. Jones*, 529 U.S. 244 (2000)). That Georgia statute had been implemented subject to a policy statement from the parole board that provided:

> "Policy: It is the policy of the Board that all Life Sentence Cases denied parole may be set for reconsideration up to a maximum of eight years from the date of the last denial when, in the Board's determination, it is not reasonable to expect that parole would be granted during the intervening years. Inmates set-off under this policy may receive expedited parole reviews in the event of a change in their circumstance or where the Board receives new information that would warrant a sooner review."

*Jones v. Garner*, 164 F.3d at 595 (quoting Georgia State Board of Pardons and Paroles Policy Statement No. 4.110).

9

1  [board], that its retroactive application will result in a longer period of incarceration than under the
2  earlier rule." *Garner*, 529 U.S. at 255.  The individual prisoner "must show that as applied to his
3  own sentence the law created a significant risk of increasing his punishment." *Id.*  The "general
4  operation of the [State's] parole system may produce relevant evidence and inform further analysis
5  on the point." *Id.*   *Garner* remanded the case for further development of the record on whether the
6  statutory amendment, as applied, violated the Ex Post Facto Clause.  *See id.* at 256-57.  *Garner*
7  noted there were significant qualifications to the new law:

> The law changing the frequency of parole reviews is qualified in two important respects. First, the law vests the Parole Board with discretion as to how often to set an inmate's date for reconsideration, with eight years for the maximum. See Ga. Rules & Regs., Rule 475–3–.05(2) (1985) ( "Reconsideration ... shall take place at least every eight years"). Second, the Board's policies permit "expedited parole reviews in the event of a change in their circumstance or where the Board receives new information that would warrant a sooner review." App. 56.  These qualifications permit a more careful and accurate exercise of the discretion the Board has had from the outset. Rather than being required to review cases *pro forma*, the Board may set reconsideration dates according to the likelihood that a review will result in meaningful considerations as to whether an inmate is suitable for release.

*Garner*, 529 U.S. at 254.

Mr. Saif'ullah urges that the clearly established federal law from the Supreme Court for § 2254(d) purposes includes a third case, *Peugh v. United States*, 133 S. Ct. 2072 (2013).  Although *Peugh* is an Ex Post Facto Clause case, it offers little help to the analysis of Mr. Saif'ullah's claim because it is so far afield factually.  At issue in *Peugh* was "whether there is an *ex post facto* violation when a defendant is sentenced under [advisory Federal Sentencing] Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense." *Peugh*, 133 S. Ct. at 2078.  The Supreme Court held that there was an Ex Post Facto Clause violation because the newly promulgated Guidelines "alter[ed] the substantive 'formula' used to calculate the applicable sentencing range" and resulted in a longer sentence.  *Id.* at 2088; *see id.* at 2079 (low end of newly promulgated Guidelines was 33 months higher than high end of Guidelines range in effect when defendant committed his crime).  *Peugh* does not apply to the present case because it is a sentencing

10

case rather than a parole case. *Peugh* also does not apply to the present case because the change in the frequency of parole hearings did not alter the substantive formula used to calculate Mr. Saif'ullah's sentence.

Two lower court cases provide some guidance, although they are not controlling in this habeas action governed by 28 U.S.C. § 2254(d)(1). In *Gilman v. Schwarzenegger*, 638 F.3d 1101, 1108-11 (9th Cir. 2011), the Ninth Circuit held that, although extensive changes to frequency of parole hearings required by Marsy's Law appeared to create a significant risk of prolonging plaintiffs' incarceration, the availability of advance hearings precluded federal injunctive relief because such availability sufficiently reduced the risk of increased punishment for prisoners under the standard set out in *Garner*. As respondent notes, *Gilman* was a § 1983 class action, rather than a habeas action, which means that it was not decided within the limits of § 2254(d), i.e., the *Gilman* court was not reviewing the reasonableness of a state court's decision and was not bound to limit the source of law to the holdings of the U.S. Supreme Court.[4]

The other lower court case of interest is *In re. Vicks*, 56 Cal. 4th 274 (Cal. 2013), in which the California Supreme Court held that Marsy's Law did not on its face or as applied violate the Ex Post Facto Clause in the U.S. Constitution or the California Constitution. *Id.* at 278-79, 317; *see generally id.* at 287 ("Our California [ex post facto] provision provides the same protections and is analyzed in the same manner as the federal provision").[5] The safety valves in the system saved the amendment. The prisoner could petition to advance the hearing date, and the parole board could

---

[4] The *Gilman* decision cited in the text was on appeal from the district court's order granting a preliminary injunction; the Ninth Circuit held that the district court had abused its discretion in determining that the plaintiffs were likely to succeed on the merits of their claim that Marsy's Law violated the Ex Post Facto Clause. *Gilman*, 638 F.3d at 1103. The district court later held a bench trial, after which it found that the longer periods between parole hearings under Marsy's Law violated California prisoners' ex post facto rights. *Gilman v. Brown*, E. D. Cal. No. 05-cv-00830-LKK, Docket # 532 (order filed February 28, 2014). The district court issued an injunction requiring the parole board to "apply Cal. Penal Code § 3041.5, as it existed prior to Proposition 9, to all class members." *Id.* at 58. The State appealed that ruling, and the Ninth Circuit issued a stay during the pendency of the appeal. *Gilman v. Brown*, Ninth Cir. No. 14-15613, Docket # 28 (order filed August 12, 2014 granting stay). The appeal is still pending.

[5] Marsy's Law also made other changes to the law in California. *See Vicks* 56 Cal. 4th at 282-83. As in Mr. Saif'ullah's case, the question in *Vicks* pertained to the amendment to California Penal Code section 3041.5 that lengthened the periods between parole hearings.

11

decide on its own to advance the hearing date. *See* Cal. Penal Code § 3041.5(b)(4) and (d)(1). In addition to these statutorily authorized methods to advance the hearing when there was a change of circumstance or certain new information, the board implicitly had the "authority to direct its staff to review a particular prisoner's circumstances at any time to determine if there is a reasonable likelihood the prisoner is suitable for parole." *Vicks*, 56 Cal. 4th at 302. For example, if the panel thought the prisoner may be suitable in one year or if there was a specific problem that could be corrected quickly, the panel could direct staff to conduct an internal review at a future date to determine whether parole was appropriate. *See id.* *Vicks* acknowledged that section 3041.5 only allowed a prisoner to petition to advance the hearing date once every three years, but believed that this limitation did not pose a significant risk of prolonging a prisoner's incarceration because most factors relating to parole suitability are fixed or "are not of a type amenable to rapid change" and the board generally can anticipate the length of time that will be needed to overcome the deficits with respect to suitability. *See id.* at 303-04. The slow-changing nature of the suitability factors, combined with the ability to advance a hearing date, made the amendments to section 3041.5 like the scheme upheld in *Garner*. *Vicks*, 56 Cal. 4th at 304-06. The California Supreme Court rejected both the facial and as-applied challenges to Marsy's Law. *Id.* at 318; *cf. id.* at 318 (Liu, J., concurring) (although there was no evidence currently of an ex post facto violation, evidence might eventually be developed (e.g., with regard to the practice of advancing the hearing dates or with regard to the speed with which suitability factors do change) that might eventually make the law susceptible to an as-applied challenge).

C.     Analysis of Mr. Saif'ullah's Claim

The state court's rejection of Mr. Saif'ullah's Ex Post Facto Clause claim was not contrary to or an unreasonable application of clearly established law as set forth by the U.S. Supreme Court. In a nutshell, the state court reasonably could have determined that the statutory amendment providing for longer delays between scheduled parole hearings did not create a "sufficient risk of increasing the measure of punishment," *Morales*, 514 U.S. at 509, in light of the ability of the parole board and the prisoner to request that the next parole hearing date be advanced when circumstances warranted it. Determining that the petition to advance the hearing date worked as a safety valve to sufficiently

1 mitigate the risk posed by the longer gaps between regularly scheduled parole hearings would have
2 been entirely consistent with *Morales* and *Garner*, both of which declined to find Ex Post Facto
3 Clause violations in similar systems where the next parole hearing date could be advanced upon
4 changed circumstances.

<u>The Facial Challenge</u>: The state court's determination that section 3041.5, as amended, does not on its face violate the Ex Post Facto Clause was not contrary to or an unreasonable application of clearly established federal law as set forth by the U.S. Supreme Court. Although the amended statute lengthens the period between regularly scheduled parole hearings, the next parole hearing date can be advanced when appropriate, and therefore makes section 3041.5, as amended, like the amendments upheld in *Morales* and *Garner*. Mr. Saif'ullah is permitted by section 3041.5(d)(1) to petition to advance the next parole hearing date so that he may obtain a hearing date before his 2018 regularly scheduled parole hearing date if he has new information or changed circumstances. Additionally, the parole board is permitted by section 3041.5(b)(4) to exercise its discretion to advance a hearing date so that the prisoner may obtain a hearing date before the next scheduled parole hearing date. *See* Cal. Penal Code § 3041.5(b)(4) ("The board may in its discretion, after considering the views and interests of the victim, advance a hearing set pursuant to paragraph (3) to an earlier date, when a change in circumstances or new information establishes a reasonable likelihood that consideration of the public and victim's safety does not require the additional period of incarceration of the prisoner provided in paragraph (3).")

Moreover, the California Supreme Court, in interpreting the statute, concluded that the parole board has the implicit authority "to direct its staff to review a particular prisoner's circumstances at any time to determine if there is a reasonable likelihood the prisoner is suitable for parole." *Vicks*, 56 Cal. 4th at 302. The state's highest court is the final authority on the law of that state. *Sandstrom v. Montana*, 442 U.S. 510, 516-17 (1979). A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Hicks v. Feiock*, 485 U.S. 624, 629 (1988).

The state court in the instant case reasonably could have determined that these avenues to parole consideration on an expedited basis adequately reduce the concern that California prisoners

might be suitable for parole today but unable to secure their release until 7, or 10, or 15 years from now, as might be the situation under a rigid system for parole hearings that had no provision for advancing the hearing date. Like *Garner*, 529 U.S. at 254, the state court reasonably could have concluded that the discretion of the Parole Board to advance the next parole hearing was an important factor supporting its conclusion that there was not a sufficient risk of an increase measure of punishment for Mr. Saif'ullah. *See Gilman v. Schwarzenegger*, *supra*, 638 F.3d at 1108-11. Further, as in *Morales* and *Garner*, the changes brought about by Marsy's Law did not substantively change parole for existing prisoners. Marsy's Law did "not alter the calculation of the sentence, the calculation of credits, the criteria relevant to the determination of suitability for parole, or the criteria relevant to the determination of the parole date once a prisoner is found suitable for parole." *Vicks*, 56 Cal. 4th at 307. As in *Garner*, the longer deferral of the next parole hearing can be made only upon a determination by the parole board that it is not reasonable to expect that the prisoner will be ready for parole in the intervening years. *See* Cal. Penal Code § 3041.5(b)(3)(C).

It is also consistent with the California Supreme Court's analysis in *Vicks*. Although *Vicks* was decided after Mr. Saif'ullah filed his federal habeas petition and therefore is not the decision to which § 2254(d) applies, one can consider whether the California Court of Appeal's rejection of Mr. Saif'ullah's claim would have passed muster under § 2254(d) if that court had followed an analytic path like that set out in *Vicks*. Thus, *Vicks* bolsters the conclusion that the California Court of Appeal's rejection of the ex post facto claim was not contrary to or an unreasonable application of *Garner* or *Morales*.

The state court reasonably could have concluded that, although the next regularly scheduled parole hearing will not be held as soon under the amended § 3041.5 as it would have been held under the former law, *see Vicks*, 56 Cal. 4th at 300, the amendment passes muster under *Garner* because the overall scheme functions in a manner that mitigates the risk that the board will fail to exercise its discretion at a point in time when it might have exercised its discretion under the prior scheme and concluded that a prisoner was suitable for parole. As *Vicks* explained,

> [A]ny risk of prolonged incarceration introduced by various other changes effected by Marsy's Law is mitigated by a prisoner's right to seek an advanced hearing and the Board's discretion to advance a

14

**United States District Court**
For the Northern District of California

hearing at any time a change in circumstances or new information establishes a reasonable probability of suitability for parole. The provisions of Marsy's Law that (1) increase the maximum deferral period to 15 years, (2) shift the presumption regarding whether to set an earlier or later date to favor a longer deferral period, and (3) impose a burden of clear and convincing evidence before a hearing may be set for a date earlier than 15 years (§ 3041.5, subd. (b)(3)) affect only the date scheduled at the time parole is denied. In cases in which these provisions compel the Board to select a deferral period that is longer than the Board believes will probably be necessary to overcome the prisoner's deficits, the Board may, at the time it denies parole, direct staff to conduct an internal review at an earlier date to determine whether a change in circumstances establishes a reasonable likelihood that further incarceration is not required to protect the public. In cases in which the Board selects a long deferral period with no expectation that the prisoner will be suitable for parole at an earlier date, the prisoner may bring changed circumstances and new information to the Board's attention every three years. In the latter cases, given that the Board, in the exercise of its very broad discretion, has determined that a long period of additional incarceration will be required, and given the nature of the criteria related to suitability for parole, many of which are not amenable to rapid change, it is highly unlikely that a prisoner will become suitable for parole in a shorter period than the three years between applications to advance the hearing.

These provisions requiring the Board to choose a longer deferral period are similar to the Georgia parole board's policy to defer reconsideration for the maximum period allowed under the new law (eight years rather than the prior three years) "'when, in the Board's determination, it is not reasonable to expect that parole would be granted during the intervening years.'" (*Garner, supra*, 529 U.S. at p. 254, 120 S.Ct. 1362.) Each scheme favors longer deferrals that exceed the maximum deferral previously allowed, but each authorizes the advancement of a hearing in the event of a change in circumstances or new information.

Although multiple changes to the parole scheme contribute to longer periods between hearings, the changes have no cumulative effect that would create a significant risk of prolonged incarceration. (*See Morales, supra*, 514 U.S. at p. 509, 115 S.Ct. 1597; *Garner, supra*, 529 U.S. at p. 250, 120 S.Ct. 1362 [the question of whether a retroactive procedural change creates a significant risk of prolonging a prisoner's incarceration is "'a matter of "degree"'"].) Regardless of whether a hearing is deferred for three years or 15 years, the risk that the prisoner will remain incarcerated longer than under the prior scheme is mitigated by the Board's discretion to advance a hearing any time there is a change in circumstances or new information. Although a deferral of 15 years might seem to increase the risk more than a deferral of three years, any enhanced risk is mitigated by fact that the prisoner may petition every three years to advance the hearing, and the fact that the Board, which has broad discretion to determine suitability for parole, has determined that a lengthier deferral period is warranted. The Board's determination reflects that the factors impeding a finding of suitability for parole are not amenable to rapid

15

> change, and an earlier hearing will not result in a finding of suitability for parole.

*Vicks*, 56 Cal. 4th at 305-06.  A rejection of the ex post facto claim using this analysis would not have been contrary to or an unreasonable application of *Garner* or *Morales.*

    <u>The As-Applied Challenge</u>:  Mr. Saif'ullah also has not shown entitlement to relief on an as-applied challenge to section 3041.5.  To prevail on a claim that Marsy's Law, as applied, violates the Ex Post Facto Clause, Mr. Saif'ullah had to "demonstrate, by evidence drawn from the rule's practical implementation" by the parole board, that "its retroactive application will result in a longer period of incarceration than under the earlier rule."  *Garner*, 529 U.S. at 255.  Mr. Saif'ullah made no such showing in the state court.  His habeas petition in the Los Angeles County Superior Court, *see* Resp. Ex. 1, did not present any evidence about the practical implementation of the amended version of section 3041.5 to show that it will result in a longer period of incarceration for him.  It therefore cannot be said that the superior court's rejection of his as-applied claim was contrary to or an unreasonable application of *Garner*.

    Mr. Saif'ullah urges in his traverse that an evidentiary hearing is necessary "to broaden the record and identify the number of prisoners who's maximum denial for parole are two years whose sentence was kidnapping for ransom or robbery and does not have a murder conviction and are being subjected to Marsy's Law."  Docket # 10 at 2.  His request for an evidentiary hearing is DENIED.  The premise of the request is not factually correct: Mr. Saif'ullah's denial was for seven years, not two years.  If he is suggesting that Marsy's Law does not apply to kidnappers, he is wrong on the law.  Proposition 9 was not textually limited to murderers, and the amendment to section 3041.5 was not limited to murderers.  Indeed, it was in a case brought by a prisoner serving an indeterminate life term on a kidnapping conviction that the California Supreme Court found that Marsy's Law did not violate prisoners' ex post facto rights.  *See In re. Vicks*, 56 Cal. 4th at 284.

    In any event, this Court will not hold an evidentiary hearing for Mr. Saif'ullah to develop and present for the first time evidence that might support an ex post facto claim when he did not present that evidence in state court.  In reviewing the reasonableness of a state court's decision to which § 2254(d)(1) applies, a district court may rely only on the record that was before the state

court.  *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (holding that new evidence presented at evidentiary hearing cannot be considered in assessing whether state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" under § 2254(d)(1)).  Therefore, a federal court is precluded from supplementing the record with facts adduced for the first time at a federal evidentiary hearing when a petitioner's claim has been adjudicated on the merits in state court.  *See id.* at 1399 ("It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.")

Mr. Saif'ullah urges in his traverse that statistical evidence from other cases shows high parole denial rates in the decade from 2000 to 2010.  *See* Docket # 10 at 19-20.  Like much of the traverse, this segment appears to be recycled from earlier briefs that pertain to claims other than an ex post facto claim.  Parole denial rates do not in themselves establish a sufficient risk of increased punishment resulting from lengthier periods between parole hearings.  *Cf. Morales*, 514 U.S. at 511 (high denial rates for prisoners at initial and subsequent hearings tended to show change in frequency of hearings did *not* significantly increase punishment).  Similarly, the arguments regarding California's change from an indeterminate sentencing law to a determinate sentencing law (a) are irrelevant to the Marsy's Law issue, (b) are irrelevant to this petitioner because the law changed in 1977 before he committed the kidnapping in 1978 that resulted in his life sentence, and (c) when the law changed in 1977, indeterminate sentences were retained for certain crimes, such as murder and kidnapping for ransom.  *See In re Rodriguez*, 14 Cal. 3d 639, 643-46 (Cal. 1975) (discussing indeterminate and determinate sentencing law schemes).  Another irrelevant point in the traverse is the argument about the sentencing matrix, *see* Docket # 10 at 21, which may have some relevance to a state due process analysis but not to the ex post facto claim now before the Court.

D.      A Certificate Of Appealability Will Not Issue

Mr. Saif'ullah has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and this is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly, a certificate of appealability is **DENIED**.

## VII. CONCLUSION

The petition for writ of habeas corpus is **DENIED** on the merits. The Clerk shall close the file.

IT IS SO ORDERED.

Dated: October 31, 2014

_____
EDWARD M. CHEN
United States District Judge